UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA

                                                             13 Cr. 339 (RPP)

-against-

                                                             **OPINION & ORDER**

DAVID RILEY and MATTHEW TEEPLE,

                             Defendants.
-------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

## I. Introduction

Defendant David Riley ("Riley") and Defendant Matthew Teeple ("Teeple") (collectively, the "Defendants") stand indicted with one count of conspiracy to commit securities fraud and three counts of substantive securities fraud.

On October 28, 2013, Teeple filed six pretrial motions. (See Notice of Def. Matthew Teeple's Pre-Trial Mots. ("Teeple Mots."), ECF No. 33.) These included (1) a motion to dismiss the Indictment for improper venue (joined by Riley); (2) a motion to suppress items seized pursuant to a search warrant and for a Franks hearing; (3) a motion for trial severance or for other relief from prejudicial joinder; (4) a motion to exclude testimony about John Johnson's guilty plea and entry into a cooperation agreement with the Government, based upon the Defendants' proposed stipulation that they would not impeach Johnson on these grounds; (5) a motion to compel the Government to disclose Brady material and additional discovery; and (6) a motion to dismiss the Indictment for failing to allege essential elements of the crimes charged (joined by Riley). (See id.)

Riley filed four additional motions on October 28, 2013: (1) for an order directing the

Government to provide a bill of particulars, (2) for an order directing the Government to provide a list of trial witnesses, a list of trial exhibits, and Rule 404(b) evidence sixty days before trial, (3) for an order directing the Government to provide Brady material, and (4) for severance of the trial of Riley from that of Teeple. (See Def. David Riley's Mem. of Law in Supp. of Pre-Trial Mots. ("Riley Mem."), ECF No. 24.)

The Government filed a memorandum in opposition to the Defendants' motions on November 19, 2013. (See Mem. in Opp'n by USA ("Gov't Mem."), ECF No. 41.) Defendants Teeple and Riley filed reply memoranda of law on November 26, 2013 and November 27, 2013, respectively. (See Def. Matthew Teeple's Reply Mem. of Law ("Teeple Reply"), ECF No. 43; Def. David Riley's Reply Mem. of Law ("Riley Reply"), ECF No. 45.)

During oral argument on December 4, 2013, the Court denied all of Teeple's motions, except the motion to dismiss the Indictment for failure to show venue, as to which the Court reserved decision. (See Tr. of Proceedings as to David Riley, Matthew Teeple ("12/4/13 Tr.") at 109, ECF No. 51.) Specifically, the Court denied Teeple's motion to suppress seized items and for a Franks hearing, regarding certain items seized pursuant to a search warrant (id. at 32); denied Teeple's motion for trial severance (id. at 43); denied Teeple's motion to exclude evidence concerning John Johnson's guilty plea and cooperation agreement, subject to the Defendant's right to raise the matter again at the time of trial (id. at 61); denied Teeple and Riley's motion to dismiss the Indictment for failing to allege essential elements of the crimes charged (id. at 79); and denied Teeple's motion for an order directing the Government to provide Brady material, but did order the Government "to provide any Brady material as soon as they get it" and allowed Teeple to supplement this motion with more specific requests as to identified witnesses, should any witnesses refuse to provide him with "material" and "important" Brady

information.[1] (Id. at 94-95.) As to Defendant Riley's motions, the Court ordered the Government to provide a list of trial witnesses, a list of trial exhibits, and Rule 404(b) evidence by March 3, 2014 (id. at 108), and ordered the Government to produce 3500 material on March 31, 2014, two weeks prior to trial, which is scheduled to begin on April 14, 2014. (Id. at 109.)

The Court did not rule on Riley and Teeple's motion to dismiss the Indictment for lack of venue, and instead, took the motion under advisement.[2] For the reasons that follow, that motion is denied.

**II.     Factual Background**

On March 8, 2013, the grand jury returned an indictment (the "Indictment") charging the Defendants with one count of conspiracy to commit securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and three counts of substantive conspiracy fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17 Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; and Title 18, United States Code, Section 2. (Indictment filed as to David Riley, Matthew Teeple ("Indictment") ¶¶ 18, 19, 23, ECF No. 13.)

The charges in the Indictment relate to an alleged scheme to trade in securities of Foundry Networks, Inc. ("Foundry") based on material, nonpublic information ("MNPI"). (Id.

---

[1] The Court also considered Teeple's motion for an order directing the Government to take certain measures to ensure communications between FBI agents who worked on this case and Government cooperators are properly preserved, as these communications could potentially be 3500 material. (12/4/13 Tr. at 109-15.) On December 12, 2013, the Court received a letter from the Government stating that it has been the formal policy of the FBI since 2011 to keep and maintain all items that could be discoverable at trial, and the relevant FBI agents in this case had maintained such a practice in the course of their work from at least the beginning of this case's investigation in 2009. (See Endorsed Letter, Dec. 16, 2013, ECF No. 54.) Accordingly, the Court declined to grant the Defendant's motion, based on the Government's representations that all 3500 material was being properly preserved. (Id.)

[2] On December 11, 2013, Riley filed an additional motion, joined by Teeple, asking the Court to exercise its discretion to transfer this case to the District Court for the Northern District of California, pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, "only in the alternative should outright dismissal of the Indictment for improper venue be denied." (Def. David Riley's Mem. of Law in Supp. of Rule 21 Mot. to Transfer ("Riley Mot. to Transfer") at 1, ECF No. 47; Def. Matthew Teeple's Mot. Joining Co-Def. Riley's Mot., ECF No. 50.) This Rule 21(b) motion will be decided in a separate opinion.

¶ 7.) Specifically, the Indictment alleges that from 2005 to 2008, Riley, while employed as a Vice-President and the Chief Information Officer at Foundry, obtained MNPI regarding Foundry, including information concerning an eventual acquisition of Foundry by Brocade Communications Systems, Inc. ("Brocade"). (Id.) It also alleges that Riley provided MNPI to Teeple, who was employed as an analyst for "Investment Adviser A," and that Teeple then caused Investment Advisor A to execute securities transactions in Foundry based in whole or in part on MNPI that Riley had provided to him. (Id. ¶¶ 2, 7.) The Indictment alleges that Investment Adviser A "used a prime broker located in New York, New York, among other things, to trade shares of Foundry."[3] (Id. ¶ 2; see also id. ¶¶ 18, 21, 23 (alleging Teeple and Riley acted "in the Southern District of New York and elsewhere").) It is further alleged that Investment Adviser A earned profits in excess of $16 million and avoided losses in excesses of $11 million because of these trades. (Id. ¶ 7.) Teeple is also alleged to have caused others to execute securities transactions in Foundry based upon MNPI obtained from Riley during the same period. (Id.)

### III.     Legal Standard

The United States Constitution requires that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed," U.S. Const. art. III, § 2, cl. 3, and provides that a defendant has the right to trial in "the district wherein the crime shall have been committed." U.S. Const. amend. VI; see also United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1188 (2d Cir. 1989). The Second Circuit has applied a "substantial contacts" analysis to determine where an offense is committed—taking into account "the site of the defendant's

---

[3] At oral argument, the Government stated that evidence at trial will show that Goldman Sachs & Co., Inc., in Manhattan, was the prime broker used to facilitate the execution of trading activity on the NASDAQ exchange. (12/4/13 Tr. at 13.) The Government also asserted that evidence at trial will show that certain of the specific unlawful securities transactions made pursuant to the Defendants' scheme took place on exchanges located in Manhattan, including the New York Stock Exchange and the International Securities Exchange. (Id.)

acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact-finding." United States v. Reed, 773 F.2d 477, 481 (2d Cir. 1985). Where "the acts constituting the crime and the nature of the crime charged implicate more than one location, the constitution does not command a single exclusive venue." Id. at 480. Rather, "venue is properly laid in any of the districts where an essential conduct element of the crime took place." United States v. Ramirez, 420 F.3d 134, 139 (2d Cir. 2005).

At trial, the Government bears the burden of proving venue by a preponderance of the evidence. United States v. Potamitis, 739 F.2d 784, 791 (2d Cir. 1984). However, in order to satisfy its burden with regard to pleading venue, the Government "need only allege that criminal conduct occurred within the venue, 'even if phrased broadly and without a specific address or other information.'" United States v. Ohle, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010) (citing United States v. Bronson, No. 05 Cr. 714 (NGG), 2007 WL 2455138, at *4 (E.D.N.Y. Aug. 23, 2007). Where venue is challenged on a pretrial motion to dismiss, "the Government's burden is limited to showing that the indictment alleges facts sufficient to support venue." United States v. Peterson, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005). "The question of whether there is sufficient evidence to support venue is appropriately left for trial." Ohle, 678 F. Supp. 2d at 231 (citing United States v. Chalmers, 474 F. Supp. 2d 555, 575 (S.D.N.Y. 2007)).

**IV.    Discussion**

In this pretrial motion, the Defendants do not dispute the facts supporting the Government's venue allegations. Rather, the Defendants argue that the allegations in the Indictment are insufficient to establish venue. (See Def.'s Mem. at 10.) This argument misconstrues the applicable law and is premature at this pretrial stage of the case.

As the Government points out in its memorandum (see Gov't Mem. at 6), the mere

allegation that an offense occurred "in the Southern District and elsewhere" is sufficient to overcome a pretrial motion to dismiss because "[t]he question of whether there is sufficient evidence to support venue is appropriately left for trial." Ohle, 678 F. Supp. 2d at 231; see also United States v. Szur, 1998 WL 132942 at *9 (S.D.N.Y. 1998) ("[O]n its face, the Indictment alleges that the offense occurred 'in the Southern District of New York and elsewhere,' which is sufficient to resist a motion to dismiss."). Here, the Indictment alleges that Investment Adviser A "used a prime broker located in New York, New York, among other things, to trade shares of Foundry" (Indictment ¶ 2), and that the trading in Foundry based on MNPI, caused by the Defendants' actions, occurred in the Southern District of New York and elsewhere. (Id. ¶¶ 18, 21, 23.) These allegations, concerning the "locus of the effect of the criminal conduct" and the "nature of the crime," are sufficient, at the pretrial stage, to show "substantial contact with the district." Reed, 773 F.2d at 481.

In their argument to the contrary, the Defendants rely on a case involving one count in a bank fraud prosecution, United States v. Bezmalinovic, 962 F. Supp. 435 (S.D.N.Y. 1997). (See Def.'s Mem. at 10, 17-18, 21-22, 25.) In Bezmalinovic, the court held that a bank's purely ministerial functions that are unintended and unforeseeable to a defendant are insufficient to establish venue. See id. at 441 (finding the "requisite substantial contacts do not exist" where the defendant committed all relevant acts at banks in the Eastern District of New York and the only contact with the Southern District was the banks' cashing and payment of checks through their clearing houses in Manhattan). The Defendants argue that the electronic routing of fraudulent trades through a brokerage in New York in this case would have been similarly unforeseeable to the Defendants, and that all other activities described in the Indictment took place outside of this

6

district.[4]

The Defendants' reliance on Bezmalinovic is misplaced, however, given the Second Circuit's holding in United States v. Svoboda, 347 F.3d 471 (2d Cir. 2003), which analyzed venue based on the "substantial contacts" test in Reed. In Svoboda, the Second Circuit distinguished Bezmalinovic, holding that "venue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue." Svoboda, 347 F.3d at 483 (finding venue reasonably foreseeable and proper in New York, where defendant "either knew, or could reasonably foresee, that his trades would be executed in the Southern District of New York"). The Government argues that Teeple and Riley, like the defendant in Svoboda, were "savvy investor[s]," see id., and therefore, it would have been reasonably foreseeable to the Defendants that their alleged acts would cause trading to occur in the Southern District of New York. (See 12/4/13 Tr. at 16.)

The Defendants argue that the instant case can be distinguished from Svoboda because "the trades at issue in Svoboda were placed by the defendant using a New York exchange," where the alleged trades in the instant case were placed by Teeple's employer, Investment Advisor A, and others. (Teeple Reply at 2.) However, the Svoboda Court did not emphasize the fact that the defendant himself placed certain trades when it determined that venue was proper;

---

[4] With the exception of the trades placed by Investment Adviser A that were routed through a New York brokerage, many of the other activities described in the Indictment took place in California. (See Mem. in Supp. of Def.'s Mot. to Dismiss for Improper Venue ("Def.'s Mem.") at 1, ECF No. 34.) The misappropriation by Riley of MNPI belonging to Foundry was alleged to have occurred at Foundry's headquarters in Santa Clara, California, telephone calls and meetings between Riley and Teeple occurred while both were in California, and trades executed by Investment Adviser A were made from Investment Adviser A's principal place of business in San Francisco, California. (Id.) The telephone calls between Teeple and others who are alleged to have executed securities transactions in Foundry based on Teeple's advice also occurred in California, and, in one instance, in Colorado. (Id.) Neither Teeple nor Riley are alleged to have ordered any of the trades that were routed through this district. (Id. at 3.) These facts are more relevant to a motion pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure.

7

rather, the Second Circuit's focus was on whether the defendant could "reasonably foresee" that an act in furtherance of the charged offense would occur in the Southern District. See Svoboda, 347 F.3d at 483 ("[T]he fact that Robles was a savvy investor means that he could reasonably foresee that his trades would likely be executed on either NYSE or AMEX.") Here, the allegations in the Indictment suggest that it was foreseeable to Riley and Teeple that securities transactions in Foundry would be executed in this district as a result of their alleged activities, as both were experienced in securities trading. This basis for venue is sufficient under Second Circuit law. See id.; see also United States v. Kim, 246 F.3d 186, 193 (2d Cir. 2001) (venue proper where it was reasonably foreseeable to defendant that acts in furtherance of the charged offense would occur in the district in question); United States v. Rommy, 506 F.3d 108, 123 (2d Cir. 2007) (venue proper when it is reasonably foreseeable to conspirator that an overt act will occur in the district of venue).

## V.     Conclusion

For the reasons stated above, the Defendants' motion to dismiss the Indictment for improper venue is denied without prejudice.

IT IS SO ORDERED.

Dated: New York, New York
January 7, 2014

_s/s_____
Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this opinion and order were sent to:**

**Eric Brendan Bruce**
Kobre & Kim LLP
800 Third Avenue
New York, NY 10022
(212) 488-1203
Fax: (212) 488-1220
Email: eric.bruce@kobrekim.com

**John Francis Kaley**
Doar, Rieck, Kaley & Mack
217 Broadway
Suite 707
New York, NY 10007-2911
(212) 619-3730
Fax: (212) 962-5037
Email: jkaley@doarlaw.com

**Matthew I. Menchel**
Kobre & Kim LLP
800 Third Avenue
New York, NY 10022
(212) 488-1208
Fax: (212) 488-1208
Email: matthew.menchel@kobrekim.com

**Joshua Lawrence Ray**
Kobre & Kim LLP
800 Third Avenue
6th Floor
New York, NY 10022
(212)-488-4939
Fax: (212)-488-1220
Email: joshua.ray@kobrekim.com

**Steve C. Lee**
United States Attorney Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212)-637-2413
Fax: (212)-637-2527
Email: steve.lee@usdoj.gov

**Telemachus Philip Kasulis**
United States Attorney Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212)-637-2411
Fax: (212)-637-2527
Email: telemachus.kasulis@usdoj.gov